2006-NMCA-133

144 P.3d 137

STATE of New Mexico ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,

v.

AMANDA M., Respondent–Appellant,

and

In the Matter of Angelina S., a Child.

No. 26,220.

Court of Appeals of New Mexico.

Sept. 7, 2006.

New Mexico Children, Youth & Families Dep't., Rebecca J. Liggett, Children's Court Attorney, Santa Fe, NM, for Appellee.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Amanda M. (Mother) appeals the trial court's judgment that she abused and neglected her daughter, Angelina S. We first address whether this Court should accept appellate jurisdiction where, as here, the notice of appeal of an adjudication of abuse and neglect is filed late. We next address Mother's contention that there was a lack of clear and convincing evidence that Mother abused and neglected Angelina.

{2} We affirm.

**FACTS**

{3} Piecing together the testimony of this case, the following time line emerges. On February 8, 2005, the Children, Youth and Families Department (CYFD) took fourteen-month-old Angelina into custody after Angelina was taken to the hospital with a fractured skull, subdural hematoma, and multiple bruises to her chest, sternum, head, and back. At the time, Mother lived with her boyfriend, Eric Gore, who was not Angelina's father. Gore had been Angelina's primary caretaker since the previous August.

{4} On the morning of February 8, Mother got up at 7:30 a.m. to go to work. Angelina had awakened, so Mother gave her a bottle and put her back to bed before going to work. At this time, Mother said that Angelina looked fine and did not have any bruises on her forehead. She left Angelina in Gore's care at around 7:45 to 8 a.m.

{5} At around 8 to 8:30 a.m., Gore woke up Angelina. He did not feed her at that time because he was going to wait until they got to his sister Latasha Gore's house. Right before Gore and Angelina left, at about 8:45 to 9 a.m., Mother called Gore. Their conversation did not give her any concerns.

{6} At his sister's house, Gore fed Angelina around 11 a.m. and Angelina vomited up some of this food. A short while later, at 11 to 11:30 a.m., Gore told Mother about this incident. Gore also told Mother that Angelina appeared sick and was not quite herself, but that Angelina had played with another child well after the vomiting.

{7} Mother spoke to Gore again around 2 p.m. Gore told her that Latasha had watched Angelina and two other children (Destiny and Andrew) while Gore was out moving Latasha's belongings. Gore told Mother that when he returned about a half hour to an hour later, Latasha said that Angelina had vomited again. Gore did not question Latasha about the vomiting. Later in the day, Gore noticed a bruise on Angelina's forehead, and asked Latasha about it, but Latasha did not know how it happened. When Mother called Gore again at 4 p.m., Gore told her that Angelina seemed to be feeling slightly better.

{8} Mother picked up Gore and Angelina at approximately 5 to 5:30 p.m. Gore later told the social worker investigating the case that around this time, he noticed that Angelina was not herself and appeared sick. Mother told the social worker that she did not notice anything about Angelina except that Angelina was tired. Mother also testified that because Angelina was sleeping when Mother arrived, Angelina looked groggy, as if she had just woken up. Mother stated that Angelina typically took a nap around that time. Mother then testified that when she brought Angelina to her car, she brushed back Angelina's hair and discovered a small bruise on Angelina's forehead. She asked Gore what had happened, and he told her he did not know. Mother admitted that she

looked at Angelina more upon noticing this bruise, but claimed it was all she noticed.

{9} Mother, Gore, and Angelina then went to store for ten to fifteen minutes. Mother testified that she brought Angelina into the store with her and that Angelina was still sleepy during this time. According to Mother's testimony, at some time between 5:45 and 6 p.m., the three arrived at the house of Anna Marie Castlow, who is Angelina's grandmother on Mother's side. (Mother told the social worker they arrived at 6 to 6:30 p.m.)

{10} When Castlow came home at 6:15 p.m., Mother and Gore were in the kitchen doing dishes. Castlow testified that the other children in the house rushed at her in greeting, but that due to the commotion, she only saw Angelina briefly and in passing. Castlow testified that Angelina was sitting on the floor by herself. Mother, on the other hand, testified that Angelina was playing with another child. Castlow went into the kitchen to greet Mother. When Castlow came back out, she sat on the couch and picked up Angelina. Castlow testified she looked at Angelina and then "double look[ed] again." Brushing Angelina's hair back, she saw that the side of Angelina's face was the "size of a grapefruit" and her eye was partially swollen. Castlow further stated that Angelina looked like she was not "all there," was glossy-eyed, that she looked "severely injured," and that her head was so swollen it was up against her ear. Castlow said that Angelina's appearance was "horrifying."

{11} Gore's statement to the social worker also confirmed Castlow immediately noticed the swelling on Angelina's head. Mother, however, was adamant in her testimony that Castlow had held Angelina for five to eight minutes before noticing the swelling, and only noticed it after commenting on the messiness of Angelina's hair and pulling it "*all*" the way back." Mother also asserted that the swelling on Angelina's head was not the size of a grapefruit until later on at the hospital.

{12} Soon after calling a nurse hotline, Mother and Gore took Angelina to the hospital. Angelina arrived at the hospital with a fractured skull, subdural hematoma, and multiple bruises to her chest, sternum, head, and back. A detective interviewed Mother and Gore that evening, and Mother was unresponsive and would not answer questions. Gore answered the detective's questions, but could not explain Angelina's injuries.

{13} The next day, Angela Teertstra, a senior social worker with CYFD, sat in on the detective's next interview with Mother and Gore. Neither Mother nor Gore offered an explanation for Angelina's injuries at that time. During the interview, Mother did not state that she had noticed the swelling on Angelina's head before Castlow noticed it and Gore also denied seeing any swelling or bruising (other than the bruise on the forehead) during the day.

{14} When Teertstra spoke to Mother and Gore the day after that, on February 10, both stated that they did not know what had happened to Angelina. Teertstra also spoke to seven-year-old Destiny, Gore's younger sister. Destiny was with Latasha and Angelina most of the time that Angelina was at Latasha's house. Destiny told Teertstra that she did not see anyone hit Angelina or see Angelina fall, but that while she was in another room, she heard Angelina crying and calling for her, then heard Gore tell Angelina not to go. Destiny's mother stated that ever since the day Angelina was injured, Destiny had been jumpy and overly apologetic.

{15} After taking Angelina into custody, CYFD filed an abuse and neglect petition against Mother and Gore. At trial, Mother testified that Angelina had no significant prior injuries, but that she had once fallen out of her highchair while in Gore's care. Mother had come home and taken Angelina to the hospital. Mother further insisted that Angelina's head swelling was not as large as Castlow claimed and was not visible until the moment Castlow pulled back Angelina's hair. When asked what had happened to Angelina, Mother stated, "I wasn't there; I wouldn't know." When asked if she thought her daughter's injuries were accidental, Mother replied "I wouldn't know; I wasn't there." Mother also testified that only after Gore was taken in for questioning in a later interview with the detective, he informed her that

Angelina's injuries were caused by a fall from a trampoline.

{16} The trial court, in ruling, found the trampoline story "a bunch of bologna" and Mother's testimony "absolutely unbelievable." The trial court accepted Gore's no contest plea to the abuse and neglect petition. In its written findings of fact and conclusions of law, it found that Angelina was an abused child within the purview of the Children's Code, NMSA 1978, §§ 32A–1–1 to 32A–23–8 (1993, as amended through 2005), and that:

6. There is clear and convincing evidence that [Mother] had care of the child early in the day before she went to work and that while she was at work she was told that the child was vomiting and was "not herself". The child suffered physical abuse pursuant to [S]ection 32A–4–2 B(2) of the Children's Code.

7. There is clear and convincing evidence that [Mother] did not respond appropriately to the child's injuries when she saw the child after work and it wasn't until the child's grandmother saw the child's injuries that the child was taken to the hospital. The child was at risk of further harm pursuant to [S]ection 32A–4–2 B(1) of the Children's Code.

8. There is clear and convincing evidence that [Mother] knew or should have known that the child could be injured in the care of ... Gore, pursuant to [S]ection 32A–4–2 E(3) of the Children's Code, since the child had previously been hurt when she reportedly fell out of her highchair when in his care.

9. There is clear and convincing evidence that the child was negligently endangered by [Mother] when she left the child with ... Gore and when the child was left without medical care for several hours after sustaining the injuries on February 8, 2005.

{17} Mother appeals from this judgment, and we affirm.

## DISCUSSION

### This Court Has Jurisdiction Over This Appeal

{18} We review de novo the question of whether this Court should accept jurisdic-tion where the notice of appeal from an adjudication of abuse and neglect is filed late. *See State ex rel. Children, Youth & Families Dep't v. Shawna C.*, 2005–NMCA–066, ¶ 24, 137 N.M. 687, 114 P.3d 367 (stating that questions of law are reviewed de novo). In *State ex rel. Children, Youth & Families Department v. Robert E.*, 1999–NMCA–035, 126 N.M. 670, 974 P.2d 164, this Court allowed an appeal from a termination of parental rights where the notice of appeal was filed late. *Id.* ¶¶ 9–10. Applying a presumption of ineffective assistance of counsel to such cases, we deemed the appeal timely filed because the parent's fundamental liberty interest in the care, custody, and management of their children was at stake. *Id.* Arguing that adjudications of abuse and neglect also affect this fundamental right, Mother asks this Court to extend the presumption of ineffective assistance of counsel to such proceedings, and deem her appeal timely filed.

{19} As we explained in *State v. Upchurch*, 2006–NMCA–076, 139 N.M. 739, 137 P.3d 679, we do not routinely excuse all untimely appeals. *Id.* ¶ 4. In order for the presumption of ineffective assistance of counsel to apply, the party must have a right to effective assistance of counsel. *See id.* We recognize a right to effective assistance of counsel in termination cases. *See State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000–NMCA–025, ¶ 32, 128 N.M. 701, 997 P.2d 833. Whether we will recognize that right in adjudications of abuse and neglect has not yet been addressed by our courts.

{20} In New Mexico, a parent's right to counsel at adjudications of abuse and neglect is statutory. *See* § 32A–4–10(B). This right to counsel exists from "the inception of an abuse or neglect proceeding." *Id.* In *In re Termination of Parental Rights of James W.H.*, 115 N.M. 256, 849 P.2d 1079 (Ct.App.1993), this Court recognized a parent's statutory right to counsel in termination proceedings "is worthless unless that right includes the right to *effective* counsel." *Id.* at 257, 849 P.2d at 1080 (internal quotation marks and citation omitted). While noting that a parent's right to custody of the par-

ent's child is also constitutionally protected, we concluded that "the legislature would not have statutorily guaranteed an indigent parent the right to counsel without also guaranteeing that the court-appointed counsel be effective." *Id.* at 258, 849 P.2d at 1081. Applying this rationale to the case before us, we hold that parents in an adjudication of abuse and neglect have a statutory right to effective assistance of counsel.

{21} Because we base this holding on a parent's statutory right to counsel, we do not address whether parents' rights to effective assistance of counsel during these proceedings is also constitutionally guaranteed or the standard to be applied to those claims.[1] Since Mother requests that a presumption of ineffective assistance of counsel be applied, we do not address the factors Mother claims weigh in favor of our review. In our view, the presumption that Mother seeks only requires a sufficient impact on her fundamental right to the care, custody, and management of her child. We thus decline to review Mother's claim that her attorney demonstrated other instances of ineffective representation or that the late filing was only a minimal delay.

■■■ {22} We agree with Mother that adjudicatory proceedings affect a parent's fundamental right in the care, custody, and management of their children. *See State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004–NMCA–083, ¶¶ 24–28, 136 N.M. 53, 94 P.3d 796 (noting that, because "[a] parent's fundamental liberty interest in the care, custody, and management of their children is well established," "a parent, like a criminal defendant, has a constitutional right to ... an opportunity to participate in all critical stages of abuse and neglect proceedings"). Under Section 32A–4–22(B)(1), if the trial court finds that a child is abused or neglected, the trial court may allow the child to remain with the parent "subject to those conditions and limitations the court may prescribe." The trial court may also give CYFD supervision of the child or transfer legal custody to the noncustodial parent or an agency.

Section 32A–4–22(B)(2), (3). If the parent is not allowed to retain custody of the child, the parent will be allowed to visit the child "unless the court finds that the best interests of the child preclude any visitation." Section 32A–4–22(D). These statutes demonstrate that an adjudication of abuse and neglect can seriously impact a parent's care, custody, and management of a child. We hold that this adjudication's serious impact on Mother's fundamental interest in Angelina, combined with her right to effective assistance of counsel at this stage of proceedings, warrants an extension of the rule articulated in *Robert E.*, 1999–NMCA–035, ¶ 10, 126 N.M. 670, 974 P.2d 164. We hold that in this case, where a notice of appeal from an adjudication of abuse and neglect is filed late, this Court will presume that counsel was ineffective and accept jurisdiction over the appeal.

**There Was Sufficient Evidence That Mother Abused and Neglected Child**

■■■ {23} Mother argues that there was not sufficient clear and convincing evidence from which the trial court could find that Mother had abused and neglected Angelina. *See Shawna C.*, 2005–NMCA–066, ¶ 7, 137 N.M. 687, 114 P.3d 367. "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* (internal quotation marks and citation omitted). However, this Court does not reweigh the evidence. *See Vanessa C.*, 2000–NMCA–025, ¶ 24, 128 N.M. 701, 997 P.2d 833. This Court will not substitute its judgment for that of the fact finder as to any factual matter. *Id.* Our standard of review is thus narrow, confined to the question of "whether, viewing the evidence in the light most favorable to the prevailing party, the fact finder could properly determine that the clear and convincing evidence standard was met." *Shawna C.*, 2005–NMCA–066, ¶ 7, 137 N.M. 687, 114 P.3d 367 (internal quotation marks and citation omitted).

---

1. We would hesitate to extend our opinion in this direction since the parties did not address this issue and our opinion could be taken to hold that

parents have a constitutional right to counsel at this stage of the proceedings. That is not the issue before us, and we decline to address it.

{24} Mother challenges the trial court's findings numbers six through thirteen. Regarding the trial court's finding number seven, the trial court found that Angelina was an abused child and at risk of further harm under Section 32A–4–2(B)(1). The trial court found that Mother "did not respond appropriately to the child's injuries when she saw the child after work and it wasn't until the child's grandmother saw the child's injuries that the child was taken to the hospital." Mother argues that "there was no definitive expert testimony" demonstrating how long it would take for the "full extent of the swelling and bruising" to appear, "and that there was no way to determine the exact time the injury occurred." Mother also contends that "there was apparent agreement that the full extent of Angelina's injury was partially hidden by her hair." Mother thus mainly contends that when she picked up Angelina, Angelina's injuries could not reasonably have been apparent to her.

{25} We hold that there was sufficient evidence to support the trial court's finding number seven. Dr. Coleman testified that when she examined Angelina two days after the incident, Angelina had bruises on the right side of her forehead, around her right eye, chest, right forearm, and most significantly, a great deal of soft tissue swelling on her scalp, from the right side of her head and extending to the left side. Both Gore and Mother testified to only seeing a small bruise on Angelina's forehead, and Castlow did not testify to seeing any bruising, so that there was no evidence that the bruising resulting from Angelina's injuries would have been apparent to Mother when picking Angelina up.

{26} Regardless, Angelina's skull was "broken into many pieces." Dr. Coleman determined that Angelina's injuries were caused by "great force," such as seen in children who fall from second or third story windows or who, in motor vehicle accidents, are unrestrained or improperly restrained and hit the windshield. Dr. Coleman opined that in the absence of one of these events, Angelina's injuries were consistent with child abuse.

{27} Dr. Coleman described Angelina's injuries as "life-threatening," and stated that at the time of the injury, Angelina would have been "immediately symptomatic," and "noticeably ill appearing," would not have been herself, been vomiting, and either incredibly fussy or very sleepy. Although she conceded that there was no way to date Angelina's injuries, Dr. Coleman stated that one had to look at when the child was last seen healthy and when the child became symptomatic. Mother testified that at 7:30 a.m., Angelina was healthy. Teertstra testified that Mother related that she had spoken to Gore around 11 a.m. and that he had told Mother that Angelina had spit up earlier, appeared sick, and was not quite acting like herself that morning. Mother was also aware that Angelina had vomited again sometime before 2 p.m. Mother testified that she was not there when the injuries occurred, strengthening the inference that the injuries must have occurred before Mother picked up Angelina and Gore. The trial court could have therefore reasonably inferred that Angelina's injuries occurred before she became symptomatic, which was at or before 11 a.m.

{28} At trial, Mother argued that Angelina's head swelling was not as large as Castlow stated, that it worsened at the hospital, and that the eye swelling was not visible at all until then. Mother further argued that the injury could not be seen until Angelina's hair was completely pulled back and that fourteen-month-old Angelina's hair was thicker at the time of the incident than in photographs, apparently taken after the incident, that were shown to her at trial. The fact finder may freely reject such self-serving testimony, see State v. Hunter, 2001–NMCA–078, ¶ 16, 131 N.M. 76, 33 P.3d 296, and apparently did so in this case when it declared Mother's testimony "absolutely unbelievable" and rejected Gore's untimely explanation of Angelina's injuries as "bologna." See Ledbetter v. Webb, 103 N.M. 597, 604, 711 P.2d 874, 881 (1985) (noting that the trial court's verbal comments can be used to clarify a finding).

{29} There was expert testimony that following the injury, Angelina would have

looked incredibly sick and that her condition would be "immediately apparent." When Mother picked up Angelina, she knew that Angelina had been ill that day. She conceded that she noticed a bruise on Angelina's forehead, and that she looked at her more closely at this time. She still took Angelina, who was suffering from a shattered skull and extensive bruising, to the store with her for ten to fifteen minutes before going to Castlow's home, where Angelina languished alone in the living room before Castlow noticed her injuries. Castlow confirmed that, although one had to push back Angelina's hair to see the full extent of the head swelling, that after one quick glance, *something* in Angelina's appearance had caused her to "double look" at Angelina. Whether or not the extensive swelling was partially concealed by Angelina's hair, Castlow testified that the side of Angelina's face was the "size of a grapefruit" and her eye was partially swollen. Castlow further stated that Angelina looked like she was not "all there," was glossy-eyed, that she looked severely injured, and that Angelina's appearance was "horrifying." This assessment is consistent with Dr. Coleman's testimony that Angelina would have immediately appeared ill upon being injured. We hold that this was sufficient clear and convincing evidence to support the trial court's judgment that, under Section 32A–4–2(B)(1), Mother's inaction in the face of her daughter's apparent and life-threatening injuries caused Angelina to be at risk of serious harm.

{30} This same evidence is also sufficient to support the trial court's finding that Mother negligently endangered Angelina by leaving the child without medical care for several hours. *See* § 32A–4–2(E)(2). Our holding in *In re Melissa G.*, 2001–NMCA–071, 130 N.M. 781, 32 P.3d 790, stands in contrast to the facts of the case before us. In *Melissa G.*, we reversed the trial court's conclusion that, under what is now Section 32A–4–2(E)(2), a mother had neglected her child. *Melissa G.*, 2001–NMCA–071, ¶¶ 16, 21, 130 N.M. 781, 32 P.3d 790. In *Melissa G.*, a mother had failed to discover that her young daughter had been sexually assaulted. *Id.* ¶ 18. The mother had taken a prescription pain medication and was in bed when the father of her

child (and the alleged perpetrator of the abuse) brought the child home. *Id.* ¶¶ 6, 18. The father had remained in the home for awhile and put the child to bed. *Id.* ¶ 18. During the night, the mother had changed the child in the dark as she usually did when the child wet the bed. *Id.* The child did not cry out during the night. *Id.* In the morning, the child had dressed herself, and did not complain of anything. *Id.* The child went to school, where extensive bruising and signs of sexual assault were discovered. *Id.* ¶ 5. We held that, without a history or pattern of abuse or neglect, this evidence was insufficient "to put a reasonable parent on notice that something was amiss." *Id.* ¶¶ 20–21. In this case, on the other hand, Mother was aware that something was wrong with Angelina before she even picked up her child, in addition to the expert testimony that injuries like Angelina's would result in immediately apparent signs of trauma. These signs were sufficient to have put Mother on notice that Angelina required immediate medical attention, which was not sought until after 7 p.m. that evening.

{31} Regarding finding number six, Mother argues that there was no evidence that Mother inflicted Angelina's injuries or that Gore's reports of Angelina vomiting and not acting like herself should have alerted Mother to Angelina's condition. The trial court's finding number six found that Angelina had suffered physical abuse under Section 32A–4–2(B)(2) because Mother had cared for Angelina earlier in the day, then was told that Angelina was vomiting and was not herself. Section 32A–4–2(B)(2) defines an "'abused child'" as one who has suffered physical abuse "inflicted or caused by the child's parent, guardian or custodian." While we agree that the trial court's factual findings do not support a legal conclusion that Mother "inflicted or caused" Angelina's physical abuse under Section 32A–4–2(B)(2), we consider this finding superfluous in light of our discussion above. *See Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 165, 646 P.2d 586, 592 (Ct.App.1982) (stating that a finding that is not necessary to support the trial court's judgment may be disregarded). We also consider the trial court's finding

number eight and its discussion in finding number nine that Mother knew or should have known of Gore's abuse due to Angelina's previous fall from a highchair while in Gore's care, to be equally superfluous. Finally, since Mother did not provide an argument for her challenge to the remainder of the trial court's findings, we do not address them either. *See* Rule 12–213(A)(4) NMRA (requiring that findings of fact be specifically attacked). The trial court's judgment that Angelina was abused was supported by substantial evidence.

## CONCLUSION

{32} We affirm.

{33} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and JAMES J. WECHSLER, Judge.