This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

      Petitioner-Appellee,

v.                             **No. A-1-CA-37403**

**JUSTIN T.,**

      Respondent-Appellant,

**IN THE MATTER OF TIRZAH T.,**

      Child.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**John J. Romero, Jr., District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Peter G. Tasso Law Firm, P.C.
Peter G. Tasso
Albuquerque, NM

Guardian Ad Litem

**MEDINA, Judge.**

**{1}** The district court found that Justin T. (Father) neglected and abused six-month-old Tirzah T. (Child) and terminated Father's parental rights. On appeal, Father argues that the basis for the adjudication of abuse and neglect and termination of parental rights is legally insufficient. Because we agree, we vacate the adjudication of abuse and neglect and termination of parental rights.

## BACKGROUND

### Events Preceding Adjudication Hearing

**{2}** Testimony given during the adjudication hearing yielded the facts recited below, and the district court made its findings and conclusions based thereupon. Father claims that inadequate evidence supports the district court's findings, and the parties do not dispute the facts.

**{3}** On June 3, 2016, the New Mexico Children, Youth and Families Department (CYFD) received an emergency call from the Albuquerque Police Department regarding Child, Father, and Sarah Johnson (Mother). Upon arriving at the family's apartment, the CYFD investigator discovered that Mother had been taken into custody on a probation violation for having marijuana and pills in the apartment. Father was present at the apartment and informed the investigator that he was Child's primary caretaker and that Mother had been released from jail two days prior. Father also informed the investigator that he knew Mother was smoking marijuana and admitted to using marijuana himself but expressed that he did not have any concern about using marijuana while caring for Child.

**{4}** Based on the information received from Father and concerns regarding his substance use while caring for Child, the investigator suggested that Child live with a relative as a safety monitor while Father participated in services. Father agreed to placement of Child with Father's sister (Aunt). Father was referred by CYFD for substance abuse and mental health assessments as well as to parenting classes. CYFD also permitted Father to see Child at any time as long as Aunt supervised the visits.

**{5}** On June 11, 2016, another CYFD investigator assigned to Child's case attended a family-centered meeting with Father, Aunt, and the investigator's supervisor, during which they discussed: (1) Father's substance use; (2) the needs of the family; (3) Father's lack of employment, (4) the possibility of placing Child in day care to enable Father to seek employment; and (5) a safety plan for Child. During the meeting, Aunt informed Father and CYFD that she was willing to act as Child's safety monitor for up to a year provided that Father participate in services designed to address his issues, including a mental health evaluation, counseling, assessments, and drug testing. At the

conclusion of the meeting, Father agreed that Child would remain with Aunt while he sought to engage in services. A safety plan was implemented which required that: (1) neither parent would be permitted to have unsupervised visitation with Child; and (2) Father would participate in the services as CYFD requested, including a substance abuse assessment and counseling, mental health counseling, and a referral for child early intervention.

**{6}** Shortly after taking on Child's care, Aunt attempted to enroll Child in day care, at which point she discovered that Child, then seven months old, had not been immunized and had not seen a doctor since leaving the hospital after her premature birth. Aunt brought Child up to date on her immunizations and also obtained an assessment—through the UNM FOCUS program—of Child's physical and mental development. UNM FOCUS services were recommended in part because Child was exposed to drugs prenatally. No evidence revealing the results of the assessment conducted by the UNM FOCUS program was presented at the adjudication hearing.

**{7}** Child remained with Aunt for approximately six weeks, during which time Father visited her three times. Father attempted to visit Child on two other occasions but was unable to do so because of unforeseen impediments. While Child was in Aunt's care, Father provided to Aunt: two cans of formula, one box of cereal, one box of snacks, one package of diapers, one bottle, a couple of receiving blankets, a pacifier, teething ring, and a stroller. During this time period, Father did not provide financial assistance for Child nor did he participate in any of the services to which he had been referred by CYFD, including substance abuse and mental health assessments or parenting classes. In late June 2016, Aunt informed CYFD that she could no longer act as Child's safety monitor. CYFD contacted Father to inform him that Aunt was no longer able to care for Child, and that Child would be placed in foster care unless he participated in the recommended services. Father reacted by yelling at the CYFD investigator and accusing her of lying and ended the conversation abruptly by hanging up the phone.

**{8}** On July 18, 2016, CYFD filed an abuse and neglect petition (Petition) in the district court, alleging that Child had been abused and neglected by Father and Mother. With specific regard to Father, the Petition alleged that Child was abused or neglected by Father pursuant to NMSA 1978, Section 32A-4-2(B)(1), (B)(4), and (F)(2)[1] (2016, amended 2018). On July 11, 2016, CYFD took custody of Child. CYFD did not return Child to Father, citing his continued substance use, lack of participation in services, and lack of communication with CYFD and Aunt.

**Adjudication Hearing**

**{9}** The hearing on the Petition took place on September 15, 2016 and November 4, 2016, during which testimony was heard from two CYFD investigators, Aunt, and Father. At the hearing, the district court accepted Mother's plea of "no contest" to the allegations in the Petition. Father contested the allegations made in the Petition. No

---

1 Now codified at NMSA 1978, Section 32A-4-2(G)(2) (2018). Citations to Section 32A-4-2 in this opinion are to the 2016 version, which was in effect when the Petition was filed.

medical or psychological testimony regarding Child's mental or physical development, health, or the impact of Father's actions or inaction on the same was presented at the hearing.

{10}    At the conclusion of the adjudication hearing, the district court made oral findings, including that the evidence was not clear and convincing that Child was abused pursuant to Section 32A-4-2(B)(1). However, under Section 32A-4-2(B)(4), the court stated that there was clear and convincing evidence that Father knowingly, intentionally, or negligently placed Child in a situation that could endanger her life or health based on his failure to inoculate Child, which prevented Child from being enrolled in day care. The court also stated that the purpose of a day care's inoculation requirement is to ensure not only Child's health but also the health of those who are around Child.

{11}    As to Section 32A-4-2(F)(2), the district court found that Child was without proper care and control necessary for her well-being because of Father's failure to provide care and control. Specifically, the district court stated that based on: (1) evidence that, both while the safety plan was in place and before, there was inadequate proper parental care and control as there were "substances" in the home; (2) Father's denial that the use of marijuana was detrimental to Child based on his belief that it did not impair his ability to parent; and (3) evidence that Child had not received immunizations, especially since Child was born premature.

{12}    On November 21, 2016, the district court entered its written judgment and disposition as to Father, specifically finding that his "admitted marijuana use, his failure to have [C]hild immunized, and failure to participate in [i]n-[h]ome services, has negatively impacted his ability to ensure [C]hild's safety and well-being." Father did not appeal the adjudication judgment.

**Termination of Parental Rights Trial**

{13}    CYFD subsequently moved to terminate Father's parental rights, and the district court held a termination of parental rights (TPR) trial. CYFD moved the district court to take judicial notice of Mother's no-contest plea to the allegations in the Petition and of Father's abuse and neglect adjudication. Father did not object, and the district court took judicial notice of Mother's and Father's abuse and neglect adjudications.

{14}    The court heard testimony regarding Father's post-adjudication efforts to work with CYFD toward reunification with Child. With the aid of a permanency planning worker, Father was referred to New Awakenings for initial assessments outlined in the treatment plan, including substance abuse, mental health, parenting, and domestic violence. The permanency planning worker also provided Father with a bus pass, offered him a "feed box letter," clothing, encouragement to consider vocational training through Work Force Solutions, and a Bernalillo County housing application packet along with assistance in filling out the required forms to obtain housing.

**{15}** While Father successfully completed initial assessments at New Awakenings, he failed to comply with recommended out-patient substance abuse treatment and individual therapy. Additionally, the testimony revealed that Father missed some, but not all, appointments with CYFD, did not submit to urine analysis as required, and missed some but not all therapy appointments. Between August 2016 and September 2017, CYFD discussed Child's need for permanent housing with Father on multiple occasions, but he repeatedly dismissed the issue. Father also continued to deny that his use of marijuana was a problem in need of treatment. Beginning in December 2017, Father's communication with CYFD further deteriorated. During this time Father missed several more office visits and therapy appointments, often without calling. Around this time, Father provided a new permanency planning worker with three contact numbers at a transition meeting, but the worker was often unable to reach Father with any of the numbers.

**{16}** At the end of the termination hearing, the district court addressed the statutory requirements for termination of parental rights under NMSA 1978, Section 32A-4-28(B)(2) (2005), including a finding that Child is an abused or neglected child as defined in the Abuse and Neglect Act. With regard to this requirement, the district court referenced its judicial notice of Father's abuse and neglect adjudication stating, "The first question is, has [C]hild been abused and neglected, is [C]hild abused and neglected, the answer is yes based on the adjudication and the trial and the findings on November 4[,] 2016." The district court also found that the other requirements for termination under Section 32A-4-28(B)(2) were met.

**{17}** On March 23, 2018, the district court issued written findings and conclusions in its judgment terminating Father's parental rights. The court's finding and conclusion as to neglect was again based only on Father's prior adjudication. Specifically the district court found:

> On November 4, 2016, [Father] was found, by clear and convincing evidence, to have abused and neglected . . . [C]hild pursuant to the allegations of the Petition and pursuant to . . . [Section] 32A-4-2(B)(4) and (F)(2) (now G2) in that . . . [C]hild's parent knowingly, intentionally or negligently placed . . . [C]hild in a situation that may endanger . . . [C]hild's life or health, and that . . . [C]hild was without proper parental care and control or subsistence, education, medical or other care or control necessary for . . . [C]hild's well-being because of the failure or refusal of [Father] to provide same when able to do so. Specifically, [Father's] admitted marijuana use, his failure to have . . . [C]hild immunized, and failure to participate in [i]n-[h]ome [s]ervices, had negatively impacted his ability to ensure . . . [C]hild's safety and well-being.

**{18}** This appeal followed.

**DISCUSSION**

**{19}** On appeal, Father challenges: (1) whether, as a matter of law, the district court's findings in the adjudication hearings support an adjudication of abuse or neglect; (2) whether Father's failure to comply with the treatment plan supports a termination of parental rights; and (3) whether additional support from CYFD would have allowed him to ameliorate the underlying causes and conditions of neglect.

**{20}** The State contends: (1) Father did not properly preserve his arguments for appeal; (2) Father's failure to appeal the abuse and neglect adjudicatory judgment prohibits him from doing so after the TPR hearing; (3) the adjudication of neglect was not based solely on Father's marijuana use; (4) the district court properly relied on Father's failure to comply with the treatment plan; and (5) substantial evidence supports the finding that CYFD made reasonable efforts to assist Father.

**Standard of Review**

**{21}** In both abuse and neglect adjudications and parental rights terminations the standard of proof required is clear and convincing evidence. *See* NMSA 1978, § 32A-4-29(I) (2009); *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778. Clear and convincing evidence is evidence "that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 37, 421 P.3d 814 (internal quotation marks and citation omitted).

**{22}** "In order to [evaluate] claims of evidentiary sufficiency, we must determine whether the district court's decision is supported by substantial evidence of a clear and convincing nature." *State ex rel. Children, Youth & Families Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 26, 366 P.3d 282; *see id.* ("Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." (internal quotation marks and citation omitted)); *State v. Laguna*, 1999-NMCA-152, ¶ 7, 128 N.M. 345, 992 P.2d 896 (same). "On appeal, [this Court will] not reweigh the evidence or substitute our judgment for that of the trial court on factual matters or on matters of credibility." *State ex rel. Children, Youth & Families Dep't v. William M.*, 2007-NMCA-055, ¶ 59, 141 N.M. 765, 161 P.3d 262. "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted).

**An Adjudicatory Judgment May Be Appealed After Judgment Is Rendered in Termination of Parental Rights Proceedings**

**{23}** We first address whether Father's appeal of the adjudication of abuse and neglect is untimely. "A party aggrieved by an order entered [finding that the child is abused or neglected] may file an immediate appeal to the court of appeals." NMSA 1978, § 32A-4-20(I) (2014); *State ex rel. Children, Youth & Families Dep't v. Frank G.*,

2005-NMCA-026, ¶ 41, 137 N.M. 137, 108 P.3d 543 (stating that a judgment that a child is abused or neglected is a "final, appealable order"). "[J]udgment . . . on petitions alleging abuse or neglect . . . shall be governed by the Rules of Appellate Procedure," Rule 10-352(B) NMRA, under which "[a] notice of appeal shall be filed . . . within thirty (30) days after the judgment or order appealed from is filed," Rule 12-201(A)(1)(b) NMRA.

**{24}**   Child was adjudicated as an abused and neglected child as to Father on November 21, 2016. On March 23, 2018, the district court issued judgment terminating Father's parental rights. Between these dates, Father did not appeal the adjudication of abuse and neglect. After the termination of parental rights judgment was entered, Father filed a notice of appeal seeking review of, among other things, the district court's findings in the adjudication hearings, which he argues do not support an adjudication of neglect as a matter of law.

**{25}**   We conclude that Father's arguments are properly before this Court for two reasons. First, "where a notice of appeal from an adjudication of abuse and neglect is filed late, this Court will presume that counsel was ineffective and accept jurisdiction over the appeal." *State ex rel. Children, Youth & Families Dep't v. Amanda M.*, 2006-NMCA-133, ¶ 22, 140 N.M. 578, 144 P.3d 137. Our holding in *Amanda M.* rested on our earlier opinion in *State v. Duran*, in which we held that, "failure to file a timely notice of appeal or an affidavit of waiver constitutes ineffective assistance of counsel per se, and the presumption thereof is conclusive." 1986-NMCA-125, ¶ 10, 105 N.M. 231, 731 P.2d 374. Several years later, we applied the *Duran* presumption of ineffective counsel and reviewed an untimely appeal "after four years of inaction by [the d]efendant," explaining that "[t]he first and foremost reason that the passage of time alone does not prevent application of the *Duran* presumption is based on the fundamental premise of that case: that the rights implicated by the presumption—the right to appeal and the right to effective assistance of counsel—protect a defendant's fundamental liberty interest in a fair trial." *State v. Dorais*, 2016-NMCA-049, ¶¶ 7-8, 370 P.3d 771. In *Amanda M.*, we recognized that adjudicatory proceedings also implicate those rights. *See* 2006-NMCA-133, ¶ 20 (holding that parents have a right to counsel in adjudication proceedings). We have never limited application of the presumption of ineffectiveness to a certain time period. Indeed, the "interest [in adjudicatory proceedings] is no less significant after the deadline for appeal than it was before the deadline, nor does it diminish over time." *Dorais*, 2016-NMCA-049, ¶ 8.

**{26}**   Here, Father's notice of appeal was filed five hundred and eighteen days after judgment was entered in the abuse and neglect adjudication proceedings. Although a significant amount of time had passed between the adjudication and Father's appeal, we apply the reasoning and presumption in *Dorias* and *Amanda M.*, respectively, and address Father's arguments regarding the adjudication of neglect.

**{27}**   Second, although CYFD argues that the law-of-the-case doctrine should apply to foreclose review of the district court's finding of neglect at the TPR hearing, application of the doctrine is "discretionary and flexible [and] will not be used to uphold a clearly

incorrect decision[.]" *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 41, 125 N.M. 721, 965 P.2d 305. The doctrine "considers the justness of applying a particular rule to the parties." *Id.* ¶ 42. In light of the of the fundamental liberty interests at issue in both adjudication and TPR proceedings, and given our conclusion that the adjudication may be appealed as part of an appeal of a TPR, we decline to apply the law-of-the-case doctrine.

**Evidence at the Adjudication Hearing Did Not Support a Finding of Neglect**

**{28}**   Father argues that the allegations against him did not support an adjudication of abuse and neglect as a matter of law. The district court identified three specific issues in support of its adjudication as to Father: (1) [Father]'s admitted marijuana use; (2) his failure to have Child immunized; and (3) his failure to participate in in-home services. Father focuses his arguments on the first two issues identified by the court. Particularly, Father argues that marijuana usage alone cannot constitute neglect and cites to numerous cases intended to support his contention. Father also argues that failure to immunize a child has never been sufficient as the sole basis for a finding of neglect. In response, CYFD argues that the cases cited by Father are distinguishable and that the failure to immunize Child—while not dispositive of neglect—was symptomatic of a larger issue. For the reasons we explain below, we hold that the evidence at the adjudication hearing was insufficient to support an adjudication of neglect.

**{29}**   In their hearing testimony, CYFD officials described Father's persistent use of marijuana and failed efforts to comply with the treatment plan. Additionally, Aunt testified that Child had not been seen by a doctor since her premature birth and that Child lacked immunizations.

**{30}**   Conspicuously absent from the record is any evidence showing that Father's marijuana use harmed Child or caused Father to intentionally or negligently disregard Child's well-being and proper needs. *State ex rel. Children, Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 17, 130 N.M. 781, 32 P.3d 790 (requiring clear and convincing evidence of parent's "culpability through intentional or negligent disregard of [Child's] well-being and proper needs"). Father's marijuana use, standing alone, is insufficient. "An unfavorable personal status, such as low IQ, poverty, mental illness, incarceration, prior convictions, or *addiction*, is . . . relevant only to the extent that it prompts . . . the neglect which is defined as the failure to provide proper parental care and control or an inability to discharge his responsibilities to and for the child." *State ex rel. Children, Youth & Families Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 30, 137 N.M. 687, 114 P.3d 367 (emphasis added) (internal quotation marks and citation omitted). *Shawna C.* requires a causal connection between the unfavorable personal status and the alleged neglect.

**{31}**   CYFD acknowledges that an unfavorable personal status alone is insufficient to establish neglect, but nonetheless argues a causal connection between Father's marijuana use and the facts relevant to the district court's finding. Specifically, CYFD states that Child was born prematurely, she was never taken to a doctor after birth, and

she required services by UNM FOCUS, but CYFD presented no evidence to show a causal connection between these facts and Father's marijuana use. The only evidence regarding Child's actual condition was Aunt's testimony that Child participated in an assessment by UNM FOCUS to evaluate whether Child was developmentally or cognitively behind. This evidence falls short of showing harm to Child because the record does not include the results of the assessment, evidence revealing the nature of services UNM FOCUS provided to Child, or any causal connection between the results and action or inaction by Father. That Child continued services with UNM FOCUS does not substantiate more than a tenuous inference of harm.

**{32}** Consequently, the district court's finding is not supported by clear and convincing evidence sufficient to satisfy the definition of neglect under Section 32A-4-2(F)(2).

**{33}** Nor did CYFD present any evidence that the lack of immunizations placed Child "in a situation that may endanger [C]hild's life or health." Section 32A-4-2(B)(4). In *Shawna C.*, this Court held that, despite testimony from clinicians and psychologist as well as evidence of a criminal history, the evidence of the father's potential to be violent did not meet the clear and convincing standard. 2005-NMCA-066, ¶ 22. Specifically, we stated that the evidence, "[did] not support anything more than a vague inference of future harm [and s]uch an inference provides an insufficient basis for finding either neglect or abuse within the meaning of the statute." *Id.* In this case, no testimony was given regarding Child's likelihood of contracting preventable illness or whether Child had already suffered preventable harm due to the lack of immunization. Further, the district court's reasoning that the purpose of inoculation is also to protect the health of those around Child, has no bearing on whether Child was placed in a situation that may endanger her life or health. Similar to our holding in *Shawna C.*, the fact that Child was not immunized only creates a vague inference of future harm. Because the record does not reflect any evidence to show actual or potential danger to Child's life or health due to lack of immunization, the court's finding of abuse under Section 32A-4-2(B)(4) is also unsupported by clear and convincing evidence.

**{34}** Because the district court's findings of abuse and neglect were unsupported by clear and convincing evidence, we hold that the adjudication of abuse and neglect as to Child is insufficient as a matter of law and should be vacated.

**The District Court's Finding of Neglect at the TPR Hearing Was Not Sufficient for Termination of Parental Rights**

**{35}** "Terminating parental rights implicates rights of fundamental importance." *Hector C.*, 2008-NMCA-079, ¶ 11. "Before a court may terminate parental rights based on abuse or neglect, it must find by clear and convincing evidence: (1) that the child was abused or neglected, (2) that the conditions and causes of the abuse and neglect were unlikely to change in the foreseeable future, and (3) that . . . CYFD made reasonable efforts to assist the parent in adjusting the conditions." *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted).

**{36}** A prior adjudication of abuse and neglect is not a prerequisite to satisfying the first element of the termination statute. *See State ex rel. Dep't of Human Servs. v. Ousley*, 1985-NMCA-035, ¶ 8, 102 N.M. 656, 699 P.2d 129 ("There is nothing in the termination statute which requires a prior [district] court adjudicative proceeding [based on the prior adjudication of neglect]."). Instead, the district court may make findings of abuse or neglect even if there has not been a prior adjudication. *Id.*; *see* § 32A-4-29(A) ("A motion to terminate parental rights may be filed at any stage of the abuse or neglect proceeding by a party to the proceeding.").

**{37}** However, if the district court relies solely on a prior adjudication of neglect to meet the first element necessary for termination of parental rights, then the invalidity of the prior adjudication requires reversal of the TPR. *See State ex rel. Dep't of Human Servs. v. Perlman*, 1981-NMCA-076, ¶ 12, 96 N.M. 779, 635 P.2d 588 ("A decree thereafter terminating [the mother]'s parental rights, based upon findings and conclusions related to the void neglect decree, cannot stand.").

**{38}** As discussed above, the district court's findings at the adjudication hearing lacked sufficient evidentiary support. Consequently, the invalidated adjudication cannot satisfy the requisite finding of abuse or neglect under the termination statute. Still, a court, at a termination hearing, may find abuse and neglect independent of the adjudication sufficient to satisfy the statutory requirements. However, here, the district court relied solely on the prior adjudication, stating that the required finding of neglect was satisfied by the prior adjudication of which the district court took judicial notice. The district court never addressed whether evidence presented during the TPR hearing also substantiated a finding of abuse or neglect independent from that found at the adjudication. Additionally, in its written findings, the district court refers to the abuse and neglect adjudication on November 4, 2016, and recites the written findings issued therein. No other written finding of abuse and neglect is included in the March 23, 2016, judgment.

**{39}** Although both parties address whether Father's compliance with the treatment plan may have been used by the court to substantiate a finding of neglect at the termination hearing, the record does not reflect that the district court relied on non-compliance for this purpose. Because the district court apparently did not consider Father's compliance or lack thereof, we do not address whether such evidence could have satisfied the abuse or neglect element of the termination statute.

**{40}** Without independent or additional findings of neglect by the district court, the first element of the termination statute was not satisfied. Because the termination fails on the first statutory element, we do not reach the parties' remaining arguments.

## CONCLUSION

**{41}** Based on the foregoing we vacate the district court's adjudication of abuse and neglect and termination of parental rights as to Father.

**{42}** IT IS SO ORDERED.

JACQUELINE R. MEDINA, Judge

WE CONCUR:

JULIE J. VARGAS, Judge

ZACHARY A. IVES, Judge