# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-023**

**Filing Date: March 3, 2021**

**No. A-1-CA-38719**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

  Petitioner-Appellee,

v.

**MAISIE Y.,**

  Respondent-Appellant,

and

**RUBEN C.,**

  Respondent,

**IN THE MATTER OF JUPITER C.,
JOVIAN C., JAYDEN C., and JAIZIE C.,**

  Children.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Grace B. Duran, District Judge**

Released for Publication July 20, 2021.

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Robert J. Retherford, Children's Court Attorney
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

ChavezLaw, LLC
Rosenda Maria Chavez
Sunland Park, NM

Guardian Ad Litem

**OPINION**

**MEDINA, Judge.**

**{1}**     Maisie Y. (Mother) appeals the termination of her parental rights to Jupiter C., Jovian C., Jayden C., and Jaizie C. (collectively, Children). Mother raises four arguments on appeal: (1) requiring Mother to proceed pro se during the first day of the termination of parental rights (TPR) trial violated her due process rights; (2) the district court applied the wrong standard of proof to its neglect determination during the TPR trial by taking judicial notice of Mother's prior adjudications; (3) insufficient evidence supports a showing of active efforts by the Children, Youth and Families Department (CYFD); and (4) the district court erred in finding that Mother's continued custody was likely to result in serious emotional or physical damage to Children based on testimony from an unqualified Indian Child Welfare Act of 1978 (the ICWA) expert. For the reasons that follow, we reverse and remand for a new trial.

**BACKGROUND**

**{2}**     On September 12, 2017, CYFD filed an abuse and neglect petition alleging that Jupiter C., age seven, Jovian C., age five years and four months, and Jayden C., age two years and eleven months, were abused or neglected by Mother. After an initial adjudicatory hearing held in November 2017, the district court found, in relevant part, that the ICWA applied to the proceedings. On December 4, 2017, the district court accepted Mother's plea of no contest to the allegations in the petition and entered an adjudicatory judgment finding Children neglected as defined in NMSA 1978, Section 32A-4-2(G)(2) (2017, amended 2018). At the time of her plea, Mother was represented by court-appointed counsel. In a dispositional order, the district court adopted CYFD's treatment plan.

**{3}**     On January 17, 2018, CYFD filed an abuse and neglect petition alleging Mother neglected Jaizie C., age two months and twenty-four days. On March 5, 2018, CYFD included a second allegation of neglect in an amended petition. An adjudicatory hearing commenced on March 12, 2018, and was continued to April 23, 2018. Court-appointed counsel represented Mother during both hearings. At the continued hearing Mother did not contest the allegations of abuse or neglect. After the hearing the district court issued an adjudicatory judgment and found, in relevant part, that the ICWA applied to Jaizie C. The district court also found that CYFD proved by clear and convincing evidence that Jaizie C. was neglected, as defined in Section 32A-4-2(G)(2). In a dispositional order, the district court adopted CYFD's treatment plan.

**{4}** On November 29, 2018, Mother's court-appointed counsel filed motions to withdraw from representation in both cases, citing a breakdown of the attorney-client relationship. The district court granted the motions on December 4, 2018, and appointed new counsel.

**{5}** In February 2019, the district court consolidated the two cases, and CYFD moved to terminate Mother's parental rights to all four Children. As grounds therefore, CYFD alleged that the causes and conditions that brought Children into CYFD's custody are unlikely to change in the foreseeable future despite CYFD's reasonable efforts to assist Mother in adjusting the conditions that rendered her unable to properly care for Children. Specifically, CYFD alleged Mother was unable or unwilling to utilize its services. The district court held a TPR trial over the course of two days.

**{6}** On the first day of the TPR trial, Mother's court-appointed counsel, Julie Kester, asked to withdraw, asserting, "[Mother] does not want me to represent her." The district court asked counsel whether Mother wanted to proceed without representation to which counsel responded, "I believe you could ask her. . . . She was just very clear that she does not want me to represent her." The district court did not ask Mother if she wished to waive her right to counsel and proceed pro se and instead stated:

> Alright, here is what I think we should do. I would still like for Ms. Kester to remain in the courtroom and I would like to have you advise [Mother] in the event that she has any questions about the procedure. But we are going to go forward. I don't want this process to be compromised simply because someone comes in and says that they are unhappy.

**{7}** Five witnesses including Mother testified during the first day of the TPR trial. Our review of the trial reveals that Mother struggled to question witnesses and to respond to objections. For example, when it came time to cross-examine Children's father (Father), whose parental rights were also the subject of the TPR trial, the following colloquy occurred:

| Court: | [Mother], you can ask questions of [Father] and if you would like you can confer with Ms. Kester. |
|---|---|
| Mother: | Obviously a big issue here is my mental health, if that is a huge concern then how can I possibly represent myself, like, competently when I am thought otherwise. |
| Court: | Well that is why you did have [counsel] and you still have her to help you, to assist you. |
| Mother: | She has not helped me. |

Court:  Well but you know she is there to help you. And so . . . you have the right to ask questions of [Father] regarding his testimony.

Shortly thereafter, Father's counsel objected to Mother's attempted cross-examination on grounds that she was testifying. The district court responded, "Can you just ask a question [and] not testify?" Mother responded, "Am I going to ask questions to everybody?" The court advised that she would, and Mother asked only a few more questions before receiving another objection on the grounds that she was testifying. Mother responded, "No, I was—it wasn't testimony, and I am trying to think of questions because I was not prepared to do this today, but I want to speak for myself as much as I can. That's all." Mother then concluded her cross-examination of Father.

{8}    Later, during her cross-examination of the drug court program manager, Mother vociferously disagreed with testimony regarding the number of opportunities she had to sign up for and participate in drug court. The district court warned Mother not to argue with the witness. Thereafter Mother did not ask any questions but instead stated that her medical records would show she had a broken foot and explained why she believed she was only given one opportunity to participate in drug court. Mother's statement drew another objection on grounds that she was testifying, and the district court informed Mother that she would have an opportunity to present her own side. Mother expressed her frustration stating, "Well see if I had a competent attorney, I wouldn't have to be doing this myself." Mother also wept while attempting to cross-examine the last witness of the day. At the end of the day, the district court cautioned Mother that she came very close to stating that she was ready to relinquish her parental rights and did not want her to say anything and continued the TPR trial to June 2019.

{9}    In May 2019, and before continuing the TPR trial, the district court appointed counsel to represent Mother. Counsel represented Mother throughout the remainder of the termination proceedings during which six additional witnesses testified. The district court later entered a judgment terminating Mother's parental rights to Children. The district court concluded that Mother was unlikely to change the causes and conditions of her neglect of Children in the foreseeable future despite CYFD's active efforts to assist her and found the following:

> [1.]  [Mother] didn't engage in several parts of her case plan . . . even though she knew that her participation was required to regain custody of [C]hildren.
>
> [2.]  [Mother] did not fully engage and/or complete treatment services to remedy the causes and conditions that brought [C]hildren into CYFD custody despite ongoing efforts by CYFD and numerous referrals for services.
>
> [3.] [Mother] admitted to being bi-polar and suffering from hallucinations and needing help with medical management . . . [and] testified that other

health conditions that she has such as lupus and fibromyalgia make it difficult for her to . . . provide adequate care for . . . [C]hildren.

[4.] . . . [I]t is unlikely that even with additional time she will be able to complete the requirements of her case plan [and] . . . acknowledged that [C]hildren deserve a safe and stable home which she is unable to provide for them.

**{10}** This appeal followed.

## DISCUSSION

**{11}** Although we reverse the termination of Mother's parental rights and remand for a new trial based on the denial of Mother's statutory right to counsel, in the interest of judicial economy, we address certain legal errors that are likely to repeat themselves on remand. In particular, we address Mother's claim that the district court applied the wrong standard of proof to its neglect determination during the TPR trial when it took judicial notice of Mother's previous adjudications. We also address Mother's active efforts, arguments only, to the extent that they require clarification of law for the purposes of remand. We do not reach Mother's arguments relating to the sufficiency of the evidence or those regarding the purported unqualified ICWA expert.

### Mother's Statutory Right to Counsel at the TPR Trial

**{12}** Mother argues that her due process rights were violated when the district court required her to proceed pro se during the first day of the TPR trial. Mother specifically argues that she never stated that she wished to represent herself and additionally asserts that the district court should have advised her of the ramifications of self-representation, as enumerated in *Faretta v. California*, 422 U.S. 806, 807, 818-20 (1975), prior to "forcing her to proceed pro se[.]" CYFD concedes that Mother's due process rights were violated because she did not waive her right to counsel, she was therefore denied effective assistance of counsel, and she is entitled to reversal of the TPR judgment and remand for a new trial. However, in conceding that Mother's due process rights were violated, CYFD asserts that "*Faretta* warnings are only given when criminal defendants state that they wish to appear pro se" and that they did not apply in this case because Mother never stated she wished to represent herself. Although CYFD concedes error, we are not required to accept a party's concession on appeal; thus we review the merits of Mother's claim. *See State v. Anthony L.*, 2019-NMCA-003, ¶ 17, 433 P.3d 347 (noting that the state's concession is not binding on appeal). In doing so, we acknowledge that this issue raises due process concerns; however, we do not engage in a due process analysis because we conclude that the district court's actions violated Mother's statutory right to counsel and amounted to reversible error. We explain.

**{13}** The right to counsel during a TPR proceedings involves the interpretation of a statute, which we review de novo. *See State ex rel. Children, Youth & Families Dep't v.*

*Benjamin O.*, 2007-NMCA-070, ¶ 24, 141 N.M. 692, 160 P.3d 601 (interpreting the Abuse and Neglect Act de novo). Our Legislature recognized the importance of counsel during abuse and neglect proceedings when it created a statutory right to counsel in the Children's Code. *See* NMSA 1978, § 32A-4-10(B) (2005). Section 32A-4-10(B) provides in pertinent part that "counsel *shall* be appointed for the parent . . . until an indigency determination is made at the custody hearing. Counsel *shall* also be appointed if, in the court's discretion, appointment of counsel is required in the interest of justice." (Emphases added.) This right includes a right to appointed counsel in termination proceedings. *See Children, Youth Families Dep't v. Amanda M.*, 2006-NMCA-133, ¶ 20, 140 N.M. 578, 144 P.3d 137 (recognizing that the "right to counsel exists from the inception of an abuse or neglect proceeding" and that a parent's statutory right to counsel in termination proceedings includes the right to effective counsel (internal quotation marks and citation omitted)). In this case, the district court determined early in the proceedings that the interest of justice required the appointment of counsel for Mother. As a result of its determination, the district court appointed two different attorneys to represent Mother during phases of this case, leading up to the TPR trial. The record does not indicate that the district court ever determined that the interest of justice no longer required appointed counsel for Mother. However, on the first day of the TPR trial, the district court appears to have assumed that Mother wished to waive her right to counsel. Thus, we determine whether Mother in fact waived her statutory right to counsel.

**{14}** While a parent may waive their right to counsel, the record is devoid of evidence indicating that Mother waived her right in this case; much less that she did so in an intelligent and knowing manner. *See State ex rel. Dep't of Human Servs. v. Perlman*, 1981-NMCA-076, ¶¶ 9-10, 96 N.M. 779, 635 P.2d 588 (concluding, under a previous version of the Children's Code, that the waiver of a parent's right to counsel must be done knowingly and intelligently). After learning from counsel that Mother no longer wanted Ms. Kester to represent her, the court asked Ms. Kester to remain in the courtroom to aid Mother and moved forward with the TPR trial without ever asking Mother directly whether she intended to waive her right to counsel. At no point did Mother affirmatively state that she wished to waive her right to counsel or that she intended to proceed pro se. On the contrary, Mother's remarks during the trial, including that she was unprepared and that she would not have to represent herself if she had a "competent attorney," indicate that Mother did not wish to do so. Consequently, we conclude that Mother did not waive her statutory right to counsel and, therefore, the district court's actions violated her statutory right to counsel. *Cf. State ex rel. Children, Youth & Families Dep't v. John R.*, 2009-NMCA-025, ¶ 19, 145 N.M. 636, 203 P.3d 167 (holding under a similar provision that "failure to appoint counsel for [a c]hild is reversible error because it . . . violated the Children's Code"). We next evaluate whether the absence of counsel prejudiced Mother. *See id.* ¶ 20 ("To warrant reversal, error must be prejudicial." (internal quotation marks and citation omitted)).

**{15}** We conclude that it did because Mother was unable to effectively represent herself during the first day of the TPR trial. Mother struggled to question witnesses, struggled to respond to objections, and wept during her examination of one witness.

The witnesses during the first day of the TPR trial included service providers who testified to matters significant to the court's determination in this case—i.e., Mother's participation in the case plan, her ability to ameliorate the causes and conditions of neglect, and Children's treatment. Moreover, the few objections Mother made to these witnesses were all overruled. Based on the record in this case, we conclude that the lack of appointed counsel prejudiced Mother because she was unable to effectively contest the allegations levied against her and lacked the ability to challenge the admissibility of evidence—evidence that the district court relied on in deciding to terminate Mother's parental rights. Based on the foregoing, we hold that the district court's actions violated Mother's statutory right to counsel and amounted to reversible error. We therefore reverse the termination of Mother's parental rights and remand for a new trial.

**Burden of Proof for Neglect Determinations Involving the ICWA**

**{16}**    We now turn to Mother's claim that the district court applied the wrong standard of proof to its neglect determinations. Specifically, Mother argues that because an adjudication of abuse or neglect requires only a showing of clear and convincing evidence, the district court's taking of judicial notice of her prior adjudications to support its neglect determination did not satisfy the higher beyond a reasonable doubt standard imposed by the New Mexico Abuse and Neglect Act and the ICWA. CYFD does not contest that the beyond a reasonable doubt standard applies to the neglect determinations in this case.[1] Because this issue has not previously been decided, we address it today.[2]

**{17}**    This issue presents a question of statutory interpretation, which we review de novo. *See State ex rel. Children, Youth & Families Dep't v. Maurice H.*, 2014-NMSC-034, ¶ 34, 335 P.3d 746. In interpreting a statute we first turn to the plain meaning of the statute at issue and only proceed with further analysis "if the relevant statutory language is unclear, ambiguous, or reasonably subject to multiple interpretations." *Id.* (alteration, internal quotation marks, and citation omitted). We begin by analyzing the requirements for termination of parental rights under New Mexico law.

---

[1]CYFD construes Mother's claim as a simple challenge to the sufficiency of the evidence and argues that evidence presented during the TPR trial along with the district court's judicial notice of Mother's prior adjudication, was sufficient to meet the beyond a reasonable doubt standard. We disagree with CYFD's framing of Mother's argument. Regardless, given our reversal and remand for a new TPR trial, we do not address the sufficiency of evidence supporting the district court's findings of neglect.

[2]We acknowledge that in *State ex rel. Children, Youth & Families Department v. Arthur C.*, we assumed that the beyond a reasonable doubt standard applied in the ICWA termination cases. 2011-NMCA-022, ¶ 25, 149 N.M. 472, 251 P.3d 729, *superseded by rule on other grounds as stated in State ex rel. Children, Youth & Families Dep't v. Tanisha G.*, 2019-NMCA-067, ¶ 11, 451 P.3d 86. However, because the standard was not challenged on appeal, the question of whether the district court applied the appropriate standard of proof was not addressed. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

**{18}**    The Legislature established the standard of proof applicable to parental termination orders in NMSA 1978, Section 32A-4-29(I) (2009), which provides:

> The grounds for any attempted termination shall be proved by clear and convincing evidence. In any proceeding involving a child subject to the [ICWA], the grounds for any attempted termination shall be proved beyond a reasonable doubt and shall meet the requirements set forth in 25 U.S.C. Section 1912(f) [(2018)].

NMSA 1978, Section 32A-4-28(B) (2005), which sets out various grounds for the termination of parental rights, in turn provides in relevant part that a court shall terminate parental rights when

> the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

**{19}**    A plain reading of the language in Section 32A-4-29(I) indicates that two distinct standards of proof apply to the grounds supporting a termination of parental rights: (1) clear and convincing; and (2) beyond a reasonable doubt. In cases where the ICWA applies, the statute unambiguously requires that the beyond a reasonable doubt standard applies. Section 32A-4-29(I). Reading the statutory provisions in pari materia, we hold that Section 32A-4-29(I) dictates the grounds supporting termination of parental rights in ICWA cases, including the determination that a child has been abused or neglected under Section 32A-4-28(B)(2), must be proved beyond a reasonable doubt. *See Maurice H.*, 2014-NMSC-034, ¶ 34 ("[W]e analyze a statute's function within a comprehensive legislative scheme. In other words, a statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." (internal quotation marks and citations omitted)).[3]

**{20}**    Having clarified that the beyond a reasonable doubt standard applies to abuse and neglect determinations in TPR proceedings in which the ICWA applies, we now turn to Mother's claim that the district court failed to apply this standard when it determined that Children were neglected. In terminating Mother's parental rights, the district court took judicial notice of Mother's prior adjudications of neglect and found that as a result of her no contest pleas, "it is the law of the case that [C]hildren have been neglected."

---

[3]Mother additionally argues that 25 U.S.C. § 1912(f) (2018) requires application of the beyond a reasonable doubt standard to abuse or neglect determinations during TPR trials in which the ICWA applies. Mother cites no authority to support this contention, and because we have determined that state law requires proof of abuse or neglect beyond a reasonable doubt for termination in ICWA cases, we do not reach Mother's arguments under § 1912(f).

Significantly, the district court did not make any other findings of neglect or tie its finding to evidence presented during the TPR trial.

{21}    In New Mexico, the adjudicatory stage of abuse or neglect proceedings require that the district court determine whether abuse or neglect occurred "on the basis of clear and convincing evidence." NMSA 1978, § 32A-4-20(H) (2014). However, as discussed above, New Mexico law requires proof beyond a reasonable doubt of the grounds supporting termination in ICWA cases—including that a child has been abused or neglected. *See* § 32A-4-28(B)(2); § 32A-4-29(I). Therefore, taking judicial notice of a prior adjudication of abuse or neglect, which was made under a clear and convincing standard, and relying exclusively on that adjudication, is inadequate to demonstrate that a district court made the necessary finding beyond a reasonable doubt to support termination of parental rights.

{22}    In this case, because the district court relied solely on judicial notice of Mother's prior adjudications to support its finding that Children were neglected, the district court failed to make its neglect determination under the correct standard. Accordingly, on remand, the district court shall require that the grounds for termination of parental rights be proved beyond a reasonable doubt, as required by Section 32A-4-29(I).

**Active Efforts Must Be Proved Beyond a Reasonable Doubt**

{23}    Next, in light of the foregoing analysis and because Mother challenges the sufficiency of active efforts made in this case, we address the appropriate standard of proof under which a district court must make its active efforts determination and, in so doing, reevaluate our holding in *State, ex rel. Children, Youth & Families Department v. Yodell B.*, 2016-NMCA-029, ¶ 21, 367 P.3d 881. Mother asserts that CYFD did not show by clear and convincing evidence that it made active efforts to preserve the Indian family. Although we do not evaluate the sufficiency of active efforts because we already have reversed and remanded for a new TPR trial, because the district court must make an active efforts determination on remand, we take this opportunity to clarify the standard applicable to such determinations. To that end, we requested and received supplemental briefs addressing Section 32A-4-29(I) and its applicability to the ICWA's active efforts requirement in 25 U.S.C. § 1912(d). Having reviewed and considered the supplemental briefs, we conclude that the beyond a reasonable doubt standard applies to a district court's active efforts determination in cases in which the ICWA applies. To the extent *Yodell B.* is inconsistent with this holding, it is overruled.

{24}    The ICWA requires that "[a]ny party seeking to effect a . . . termination of parental rights to[] an Indian child under [s]tate law shall satisfy the court that *active efforts* have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d) (emphasis added). In *Yodell B.*, a father whose parental rights were terminated challenged the sufficiency of evidence to support CYFD's active efforts to prevent the breakup of the family. 2016-NMCA-029, ¶ 7. On appeal, the father did not challenge the district court's application of the beyond a

reasonable doubt standard to the active efforts requirement. *Id.* ¶ 11. However, acknowledging the absence of a specific standard of proof in § 1912(d), and the lack of applicable New Mexico case law, this Court endeavored to determine the appropriate standard by looking to authority in various other jurisdictions. *See Yodell B.*, 2016-NMCA-029, ¶¶ 8-9, 11-16. In doing so, our Court recognized that a majority of cases "have adopted the clear and convincing standard as more appropriate" in this context. *Id.* ¶ 14.

**{25}**    For example, our Court looked to *Valerie M. v. Arizona Department of Economic Security*, in which a mother appealed the termination of her parental rights arguing that the ICWA requires proof beyond a reasonable doubt for state law findings supporting termination. 198 P.3d 1203, 1205 (Ariz. 2009). Rejecting the mother's arguments in favor of a clear and convincing evidence standard, the court in *Valerie M.* recognized that the ICWA contemplates that state courts will adjudicate custody cases involving Indian children. *Id.* at 1206-07. In such cases, the ICWA imposes substantive requirements, including that the state court must be persuaded that active efforts have been made. *Id.* at 1206. With regard to the ICWA's substantive requirements, the Arizona court concluded that "Congress did not displace state law in favor of uniform standards [but] instead it recognized that federal requirements would be in addition to state law requirements, which will themselves prevail over federal law if they are more protective of parental rights." *Id.* at 1207. Thus, the court reasoned that the fact "Congress did not expressly address the burden of proof applicable to findings required by state law suggests that this was not an issue on which Congress thought a minimum federal standard was necessary." *Id.* In turn, it was appropriate to require only a showing of active efforts by clear and convincing evidence—the standard applicable under Arizona state law. *Id.* at 1206-07.

**{26}**    Our Court also looked to *Nebraska v. Martina A.*, in which a mother appealed the termination of her parental rights and similarly argued that the beyond a reasonable doubt standard should apply to evidence of active efforts under a state statute identical to 25 U.S.C. § 1912(d). *Nebraska v. Martina A.*, 744 N.W.2d 55, 59-60 (Neb. 2008). Like § 1912(d), the state statute did not specify an applicable standard of proof. *Martina A.*, 744 N.W.2d at 60. In addressing the mother's arguments, the court analyzed other subsections of § 1912 that do establish specific standards of proof and reasoned that "[t]he specified standards of proof in . . . § 1912(e) and (f) illustrate that if Congress had intended to impose a heightened standard of proof for the active efforts element in § 1912(d), it would have done so." *Martina A.*, 244 N.W.2d at 61. Because the Nebraska court concluded that Congress did not intend to require a specific standard of proof for active efforts, the court declined to interpret the ICWA or the state corollary as requiring proof of active efforts beyond a reasonable doubt. *Id.* Instead, the court concluded that the clear and convincing evidence standard was appropriate, as it is the general standard required for terminating parental rights under Nebraska law. *Id.*

**{27}**    We agree with the cases identified in *Yodell B.*, including *Valerie M.* and *Walter W.*, to the extent they support a conclusion that in the absence of a federally established standard of proof, a state may establish the appropriate standard applicable under its

laws. However, *Yodell B.*'s reliance on these cases to establish the clear and convincing evidence standard for active efforts is misplaced. Unlike the majority jurisdictions identified in *Yodell B.*, given our analysis of Section 32A-4-29(I), it is clear that New Mexico has adopted a higher burden of proof in ICWA termination cases. While the Court in *Yodell B.* references Section 32A-4-29(I) in passing, it did not substantively evaluate its requirements. *See Yodell B.*, 2016-NMCA-029, ¶ 16. Instead, the Court adopted the majority's approach without recognizing that Section 32A-4-29(I) imposes a beyond a reasonable doubt standard to cases in which the ICWA applies.

{28}   As discussed above, New Mexico law requires proof beyond a reasonable doubt of the grounds for termination of parental rights in ICWA cases. *See* § 32A-4-29(I) (providing that "[i]n any proceeding involving a child subject to the [ICWA], the grounds for any attempted termination shall be proved beyond a reasonable doubt and shall meet the requirements set forth in 25 U.S.C. Section 1912(f)"). Although CYFD argues that the ICWA's active efforts requirement is not a ground for termination subject to the higher standard imposed by Section 32A-4-29(I), we are not persuaded. Our case law recognizes that § 1912(d) requires CYFD to make *active efforts*, as opposed to reasonable efforts under Section 32A-4-28(B)(2), in support of terminating a parent's parental rights in cases where the ICWA applies. *See Yodell B.*, 2016-NMCA-029, ¶ 20 (defining "active efforts" as "a more involved and less passive standard than that of reasonable efforts" (internal quotation marks and citation omitted)); 25 U.S.C. § 1912(d) (requiring "active efforts" to provide services to a parent of an Indian child prior to termination of parental rights); § 32A-4-28(E) (requiring that "[t]he termination of parental rights involving a child subject to the [ICWA] shall comply with the requirements of that act"). Indeed, our Supreme Court has observed that "[i]n cases where [ICWA] applies, a showing of *active* efforts on the part of [CYFD] is required *before* a parent's parental rights may be terminated." *State ex rel. Children, Youth & Families Dep't v. Keon H.*, 2018-NMSC-033, ¶ 42, 421 P.3d 814 (emphasis added).

{29}   Therefore, because a showing of active efforts is one of the grounds that must be established in support of ICWA terminations and because Section 32A-4-29(I) applies the beyond a reasonable doubt standard to the grounds for parental terminations in ICWA cases, we hold that New Mexico law requires proof beyond a reasonable doubt of active efforts. Application of this higher standard of proof is not only required under Section 32A-4-29(I) but mandated by 25 U.S.C. § 1921 (2018), which provides that "[i]n any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a *higher standard of protection* to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard." (Emphasis added.) In New Mexico, the unambiguous language used in Section 32A-4-29(I) clearly evinces our Legislature's intent to impose a higher burden of proof to the grounds supporting parental terminations in ICWA cases. *See Maurice H.*, 2014-NMSC-034, ¶ 34 ("To glean the Legislature's intent, the Court first turns to the plain meaning of the words at issue." (alteration, internal quotation marks, and citation omitted)). Given our holding, we overrule *Yodell B.* to the extent it requires proof of active efforts under the clear and convincing evidence standard.

**{30}** We recognize that the principle of stare decisis generally obligates courts to follow precedent, which in turn promotes stability of the law, judicial economy, and fairness in assuring that like cases are treated similarly. *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305. Nevertheless, at times special justification warrants a departure from precedent. *Id*. ¶ 34. While "[w]e do not overturn precedent lightly . . . where our analysis convincingly demonstrates that a past decision is wrong, [our c]ourt[s] ha[ve] not hesitated to overrule even recent precedent." *State v. Radosevich*, 2018-NMSC-028, ¶ 21, 419 P.3d 176 (internal quotation marks and citation omitted). As evidenced by our analysis of relevant state and federal statutes, we conclude that the clear and convincing evidence standard was incorrectly identified as the standard of proof applicable to active efforts in *Yodell B.* Further, given the Legislature's clear intent to impose a higher burden of proof in ICWA termination cases through Section 32A-4-29(I), *Yodell B.* directly conflicts with this goal. We therefore depart from *Yodell B.* because "it constitutes a detriment to coherence and consistency in the law." *Trujillo*, 1998-NMSC-031, ¶ 36 (internal quotation marks and citation omitted); *see also State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 43, 135 N.M. 375, 89 P.3d 47 (overturning precedent where "[t]he decision pose[d] a direct obstacle to the realization of important objectives embodied in New Mexico water law" (internal quotation marks and citation omitted)); *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 14, 133 N.M. 661, 68 P.3d 901 (overturning precedent where the decision "interfere[d] with the legislative objectives inherent in the uninsured motorist statute").

**{31}** Although we overturn *Yodell B.* to the extent that case requires proof of active efforts by clear and convincing evidence, we emphasize that our holding in this case is limited only to the standard of proof required and does not alter our holding in *Yodell B.* as to the nature of active efforts. *See* 2016-NMCA-029, ¶¶ 17-20 (discussing the nature and extent of active efforts required under ICWA).

## Mother's ICWA Expert Arguments

**{32}** Because we conclude that the district court committed reversible error in denying Mother's statutory right to counsel and that remand for a new trial is necessary, we do not reach Mother's argument regarding the qualification of the ICWA expert during the TPR trial.

## CONCLUSION

**{33}** For the foregoing reasons, we reverse the termination of Mother's parental rights and remand to the district court for a new trial in conformance with the standards discussed in this opinion. In doing so, we expect the district court to carefully consider all of the grounds for termination including—but not limited to—determinations of abuse or neglect, active efforts provided, and whether the continued custody of Children is likely to result in serious emotional or physical damage; and we further emphasize the importance of detailed findings of fact by the district court to support its ruling.

**{34}** IT IS SO ORDERED.

JACQUELINE R. MEDINA, Judge

WE CONCUR:

JENNIFER L. ATTREP, Judge

ZACHARY A. IVES, Judge