This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39187

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**VANCE G.,**

       Respondent-Appellant,

and

**JICARILLA APACHE NATION,**

       Intervenor,

**IN THE MATTER OF DINE G., ISAIAH G.,
AALIYAH G., MATI-LYNN G., and
NATALIE G.,**

       Children.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Bradford Dalley, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Native American Disability Law Center
Heather Hoechst
Farmington, NM

Guardian Ad Litem

Sonosky, Chambers, Sachse, Mielke & Brownell LLP
Vanessa L. Ray-Hodge
Albuquerque, NM

for Intervenor

## DECISION

**IVES, Judge.**

**{1}** Vance G. (Father) appeals from a district court judgment terminating his parental rights with respect to five of his children (Children). On appeal, Father contends that (1) the evidence was insufficient to prove beyond a reasonable doubt[1] that the New Mexico Children, Youth, and Families Department (the Department) failed to make "active efforts" to provide "remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" as required by the federal Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 to -63, and NMSA 1978, Section 32A-4-29(I) (2009); and (2) that we should apply the doctrine of plain error and reverse because the district court erred in concluding that the testimony of a Department witness satisfied ICWA's requirement that termination of parental rights be supported by testimony given by a "qualified expert witness."[2] We affirm, concluding that (1) Father's arguments do not demonstrate that the evidence was insufficient to satisfy the active efforts requirement; and (2) Father's challenge to the district court's conclusion that the Department's expert was a "qualified expert witness" is insufficiently developed to warrant appellate review.

---

[1] This Court held in *State ex rel. Child., Youth & Fam. Dep't v. Maisie Y.*, 2021-NMCA-023, ¶¶ 23-31, 489 P.3d 964, that the "active efforts" requirement of ICWA must be proven beyond a reasonable doubt, a holding that "operate[s] with retroactive effect in all ongoing cases pending in district court and on direct appeal as of March 3, 2021" under our decision in *State ex rel. Child., Youth & Fam. Dep't v. Ruben C.*, 2021-NMCA-___, ¶ 43, ___ P.3d ___ (No. A-1-CA-38499, July 29, 2021).

[2] Father appears to raise a third issue in his amended brief in chief, where he states that he is "contend[ing] that the record in this case shows that the Department failed to meet [its] burden" under ICWA of proving beyond a reasonable doubt that "Father's continued custody of Children was likely to cause them 'serious emotional or physical damage.' " *See generally* 25 U.S.C. § 1912(f). Father nowhere develops an argument supporting this contention, and we decline to review it because doing so would require us to perform the role of the advocate as well as that of the decisionmaker, "strain[ing scarce] judicial resources" and creating a "substantial risk of error." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53.

**I.  Father Fails to Demonstrate That the District Court's Finding That the Department Made Active Efforts Is Not Supported by Sufficient Evidence**

**{2}**  Father first challenges the sufficiency of the evidence to show that the Department made active efforts to provide him remedial services and rehabilitative programs "In reviewing for sufficient evidence of active efforts, our role is to determine whether the fact-finder could properly conclude that the proof requirement below was met." *State ex rel. Child., Youth & Fam. Dep't v. Yodell B.*, 2016-NMCA-029, ¶ 8, 367 P.3d 881 (alteration, internal quotation marks, and citation omitted), *overruled on other grounds by Maisie Y.*, 2021-NMCA-023, ¶¶ 23-31, 489 P.3d 964. Viewing the evidence in the light most favorable to the Department, *see In re Anhayla H.*, 2018-NMSC-033, ¶ 38, 421 P.3d 814, we ask whether substantial evidence supports the district court's decision. *See State ex rel. Child., Youth & Fam. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 22, 132 N.M. 299, 47 P.3d 859. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

**{3}**  Father's argument that the evidence was insufficient to satisfy the active efforts requirement is extremely narrow. Father contends that the Department failed to arrange for him to receive services in suitable locations and, in so failing, placed on Father "the burden of . . . independently locating and obtaining services[.]" *Yodell B.*, 2016-NMCA-029, ¶ 26. We are not persuaded.

**{4}**  At the second termination hearing in February 2020, the Department presented testimony detailing a variety of attempts by Department employees to contact Father and provide Father with services needed for Father to comply with his court-ordered treatment plan during the roughly one-and-a-half years between August 2018, when Children came into Department custody, and the February 2020 termination hearing. Father contends that this evidence was insufficient to satisfy the active efforts requirement because the Department referred him to mental health, domestic violence, and substance abuse services in Farmington, New Mexico and Durango, Colorado, rather than in Salt Lake City, Utah, where Father lived between late 2018 and early 2019, or in Monument Valley, Utah, where Father lived between May 2019 and the termination hearing. But this argument mischaracterizes the evidence presented at the hearing, which was that the Department made referrals to service providers in Farmington while Father was in Farmington and that Father indicated that he intended to return there despite leaving for Salt Lake City. Moreover, it overlooks testimony indicating that Father declined an offer by the Department to locate service providers for Father while he was in Salt Lake City, and Father does not explain why, in light of his rejection of this offer, the Department's efforts to locate service providers for him in the Four Corners area do not satisfy the active efforts requirement. Father does specifically contend that the evidence of active efforts was insufficient because the Department scheduled a comprehensive psychological evaluation—a "key component of [Father's] treatment"—only in Durango, Colorado, which was impracticable given that city's distance from Father's location in Salt Lake City and Monument Valley and his inability to obtain transportation. Yet, there was testimony at the termination hearing indicating

that no professional near Monument Valley was available to provide this service and that, although the Department would have assisted Father in obtaining transportation, Father's failure to maintain consistent contact with the Department despite its attempts to reach him prevented it from making a new appointment for him after he moved to Monument Valley. And Father nowhere explains how the Department's efforts to ensure that he received a comprehensive psychological assessment were inadequate in light of this testimony.

{5}     Limiting our review to the narrow challenge Father has presented, we reject his contention that the evidence is insufficient to show beyond a reasonable doubt that the Department made active efforts to provide Father with necessary services and programs.

## II.     Father Has Inadequately Developed His Argument That the District Court Erred in Concluding That the Department Had Presented the Testimony of a "Qualified Expert Witness"

{6}     In the alternative, Father contends that we must reverse because the district court committed plain error[3] by concluding that an ICWA specialist for the Jicarilla Apache Nation was a "qualified expert witness" whose testimony could support a finding that "continued custody of the child by [Father was] likely to result in serious emotional or physical damage" to Children within the meaning of ICWA. 25 U.S.C. § 1912(f). We conclude that Father's argument on this issue is inadequately developed to warrant appellate review.

{7}     At the termination hearing, the district court accepted the Department's proffer of Gina Keeswood, an enrolled member of the Navajo Nation, as a qualified expert witness regarding the culture and customs of Children's tribe, the Jicarilla Apache Nation. Ms. Keeswood testified that she had been employed as an ICWA specialist by the Jicarilla Apache Nation for three years and ten months and that she was familiar with the Jicarilla Apache clan system and the tribe's traditions, including its cultural, ceremonial, and childrearing practices. Counsel for the Jicarilla Apache Nation expressly stated that the Nation consented to Ms. Keeswood's testimony in the role of a qualified expert witness.

{8}     Father contends that the district court plainly erred in concluding that Ms. Keeswood was a qualified expert witness because she "lacked the requisite experience in the customs and traditions of the Jicarilla Apache Tribe." But the only bases Father provides for doubting Ms. Keeswood's qualifications are (1) that she was "a tribal member of the Navajo Nation and [more] familiar with its customs, ceremonies[,] and child rearing practices" than "with . . . Jicarilla Apache tribal practices" and (2) that she had "worked for the Jicarilla Apache Nation for only three years and ten months." Father's briefing as to each basis consists of bare assertions unsupported by any citation to authority or reasoned argument. And we see no reason to conclude (1) that,

---

3Because we conclude that Father has inadequately developed his argument that the district court erred at all, we need not decide whether this issue is subject to our preservation rules, as Father contends it is.

because Ms. Keeswood was *more* familiar with the culture and customs of the Navajo Nation, she was insufficiently familiar with that of the Jicarilla Apache Nation, or (2) that Ms. Keeswood's employment with the Jicarilla Apache Nation for any particular limited time period is necessarily disqualifying, especially given Ms. Keeswood's testimony regarding her qualifications and the fact that the Nation consented to Ms. Keeswood performing the role of a qualified expert witness. *See generally* Bureau of Indian Affairs Guidelines for State Courts & Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,157 § D.4 (Feb. 25, 2015) (providing that a "qualified expert witness should have specific knowledge of the Indian [child's] tribe's culture and customs" and that "[a] member of another tribe who is recognized to be a qualified expert witness by the Indian child's tribe based on their knowledge of the delivery of child and family services" is "presumed to meet the requirements for a qualified expert witness").

{9}     Because Father's argument is undeveloped, we decline to perform a full-scale examination of whether the testimony presented at trial is sufficient to meet the qualified expert witness requirement. *See generally Elane Photography, LLC*, 2013-NMSC-040, ¶ 70. Accordingly, we affirm the district court on this issue.

**CONCLUSION**

{10}   We affirm.

{11}   **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**GERALD E. BACA, Judge**