This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41151**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

      Petitioner-Appellee,

v.

**MAISIE Y.,**

      Respondent-Appellant,

and

**RUBEN C.,**

      Respondent,

**IN THE MATTER OF JAIZIE C., JUPITER C.,
JOVIAN C., and JAYDEN C.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Grace B. Duran, District Court Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Cravens Law LLC
Richard H. Cravens, IV

Albuquerque, NM

for Appellant

ChavezLaw, LLC
Rosenda Chavez-Lara
Sunland Park, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}**    Maisie Y. (Mother) appeals the second judgment terminating her parental rights as to Children after this Court reversed the first judgment against Mother because she was denied her statutory right to counsel. *See State ex rel. Child., Youth & Fams. Dep't v. Masie Y.*, 2021-NMCA-023, 489 P.3d 964. Mother argues (1) Children, Youth & Families Department's (CYFD) failure to give her proper notice of the second termination of parental rights (TPR) trial deprived her of her procedural due process rights, and (2) the evidence was insufficient to support termination of her parental rights. We affirm. Because the parties are familiar with the record, we omit a background section and discuss the facts and proceedings that are necessary in our analysis of the issues presented.

**DISCUSSION**

**I.    Mother's Due Process Rights Were Not Violated**

**{2}**    We begin with Mother's argument that her due process rights were violated because CYFD failed to give her proper notice of the second TPR trial. "Whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Child., Youth & Fams. Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 8, 406 P.3d 972 (text only) (citation omitted).

**{3}**    Parents have a "fundamental liberty interest in the right to custody of [their] child" and therefore "have a due process right to meaningfully participate in a hearing for the termination of their parental rights." *State ex rel. Child., Youth & Fams. Dep't v. Christopher B.*, 2014-NMCA-016, ¶ 6, 316 P.3d 918. "The essence of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks and citation omitted). "Fair notice is at bottom effective notice, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *State ex rel. Child., Youth & Fams. Dep't v. Maria C.*, 2004-NMCA-083, ¶ 26, 136 N.M. 53, 94 P.3d 796 (internal quotation marks and citation omitted).

**{4}** "[T]o comply with due process requirements, actions to terminate a parent's rights must be conducted with scrupulous fairness." *Darla D. v. Grace R.*, 2016-NMCA-093, ¶ 11, 382 P.3d 1000 (internal quotation marks and citation omitted). For termination of parental rights, due process necessitates that a parent have "the right to review the evidence presented by CYFD, to consult with [their] attorney, and to present evidence in person or by telephone or deposition." *State ex rel. Child., Youth & Fams. Dep't v. Steven R.*, 1999-NMCA-141, ¶ 11, 128 N.M. 304, 992 P.2d 317. We also recognize that due process "is a flexible right" and that "the amount of process due at each stage of the proceedings is reflective of the nature of the proceeding and the interests involved." *Rosalia M.*, 2017-NMCA-085, ¶ 9 (text only) (citation omitted).

**{5}** "To evaluate the due process owed to a parent in termination proceedings, we use the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976)." *Rosalia M.*, 2017-NMCA-085, ¶ 9. We weigh three factors under the test: "the parent's interest; the risk to the parent of an erroneous deprivation through procedures used in light of the probable value, if any, of additional or substitute procedural safeguards; and the government's interest." *Id.* Because the parent's interest and the government's interests are "equally significant," we "focus on the second prong and compare the risk to the parent of erroneous deprivation of rights with the potential burden to the state associated with additional procedures." *Id.* (internal quotation marks and citation omitted). "Our conclusion does not depend on a showing that [the parent] would have been successful if [they] had been provided with the additional procedures [they allege] should have been provided; rather, [the parent] need only show that there is a reasonable likelihood that the outcome might have been different." *State ex rel. Child., Youth & Fams. Dep't v. Browind C.*, 2007-NMCA-023, ¶ 31, 141 N.M. 166, 152 P.3d 153 (emphasis, internal quotation marks, and citation omitted).

**{6}** CYFD argues that Mother was afforded sufficient notice.[1] We agree. Our review of the record shows that CYFD served Mother's attorney and Mother in care of her attorney, at her attorney's office, with CYFD's motion to terminate Mother's parental rights. *See* Rule 10-104(B) NMRA ("Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney."). CYFD filed a certificate of service stating the same. The district court served Mother's counsel on December 27, 2022, with the notice of the TPR trial. The record further shows evidence that Mother received notice of the February 13, 2023, TPR trial through various other means. Vanessa Gouveia—Mother's previous placement plan worker (PPW)—testified that she had texted Mother about the setting and Ashley Sanders—her current PPW—stated the same. Andrea Richards—the ICWA expert—testified that she sent an email the "Thursday or Friday" before the TPR trial to

---

[1] Mother asks that we review evidence of notice under the beyond a reasonable doubt standard based upon this Court's decision in *Maisie Y.*, 2021-NMCA-023, ¶ 19. Although the grounds supporting termination of parental rights in Indian Child Welfare Act (ICWA) cases must be proved beyond a reasonable doubt, *id.*, our review of whether the notice provided to Mother was sufficient is properly reviewed under the *Mathews* balancing test.

meet with Mother. Mother did not respond. Additionally, CYFD cites Mother's attorney's statement that he had left numerous messages for Mother.

**{7}** Mother argues that CYFD should have made efforts to verify that Mother had received the text messages from her PPWs. However, CYFD must provide only "effective notice, reasonably calculated, under all the circumstances." *Maria C.*, 2004-NMCA-083, ¶ 26 (internal quotation marks and citation omitted). Both PPWs testified that they had last spoken to Mother in either late November 2022 or early December 2022. Gouveia testified that her last contact with Mother was when Mother was evicted from her then place of residence, and Mother did not provide a new address to CYFD. Although Mother argues that CYFD should have verified that the messages were received, Mother does not argue that her phone number was no longer operable or out of service, or that she was unware what phone number CYFD was using to contact her. In fact, Gouveia testified that Mother reached out about visitation around the time notice of the TPR trial was entered into the record. CYFD stated the same at the January 9, 2023, evidentiary hearing on its motion to suspend visitation.

**{8}** Mother also argues that CYFD should have personally served her with the notice of the TPR trial. In support of this contention, Mother cites Rule 10-103 NMRA, the rule setting out the requirements for service of process. *See* Rule 10-101(C)(3)(b) NMRA (defining "process" as "the means by which jurisdiction is obtained over a person to compel the person to appear in a judicial proceeding and includes the following . . . a summons and petition"). Mother, however, fails to explain why Rule 10-103 governs service of the notice of the TPR trial. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

**{9}** And the record shows that CYFD complied with Rule 10-104, the rule setting out the requirements for service of papers, by serving Mother's attorney. *See* Rule 10-104(B). We further observe that Mother was aware that she was required to maintain contact with her attorney as a condition of the current custody order.

**{10}** Finally, CYFD argues that Mother fails to articulate what additional procedures should have been used and fails to argue that there is a reasonable likelihood that the outcome might not have been different because (1) Mother was aware that the case was on track for termination; (2) Mother had a history of not being present at court proceedings; and (3) Mother's attorney ensured the district court was aware Mother opposed termination. *See Browind C.*, 2007-NMCA-023, ¶ 31. We agree. The main issues at the TPR trial, as reflected in the district court's findings, were Mother's failure to comply with her treatment plan, failure to make sustained progress, and failure to address the underlying issues that led to the second TPR trial. Although Mother argues that her pro se appearance at the first TPR trial and her pro se appearance on appeal establish that Mother would have presented her own defense if she had been present, Mother does not argue on appeal that there is evidence that would contradict CYFD's evidence such that "there is a reasonable likelihood that the outcome might have been different." *See id.* (emphasis, internal quotation marks, and citation omitted). Despite

Mother's notice argument, "[t]he facts in this case sealed the family's fate, not Mother's presence or absence" during the course of the proceedings. *See Maria C.*, 2004-NMCA-083, ¶ 47. We hold that CYFD provided Mother reasonable notice and therefore her due process rights were not violated.

## II.    The District Court's Findings Were Supported by Substantial Evidence

**{11}**    We next turn to Mother's arguments that the district court's decision was not supported by substantial evidence. "[T]he grounds supporting termination of ICWA cases, including the determination that a child has been abused or neglected under [NMSA 1978,] Section 32-4-28(B)(2) [(2005, amended 2022)], must be proved beyond a reasonable doubt." *Maisie Y.*, 2021-NMCA-023, ¶ 19. To prove something beyond a reasonable doubt, "[t]he evidence and inferences drawn from that evidence must be sufficiently compelling so that a hypothetical reasonable fact-finder could have reached a subjective state of near certitude about its conclusion." *State ex rel. Child., Youth & Fams. Dep't v. James M.*, 2023-NMCA-025, ¶ 21, 527 P.3d 633 (alteration, internal quotation marks, and citation omitted). "Our standard of review, therefore, is whether, viewing the evidence in the light most favorable to CYFD, the fact-finder could properly determine that the beyond a reasonable doubt standard was met." *Id.* (text only) (citation omitted).

**{12}**    We begin with Mother's arguments that CYFD failed to meet its burden generally at the TPR trial. Mother argues that CYFD failed to establish beyond a reasonable doubt that (1) Mother's actions caused Children's neglect; (2) CYFD made active efforts to assist Mother with her case plan; and (3) Mother's actions traumatized Children. Although Mother attempts to challenge CYFD's evidence presented at the TPR trial and the district court's findings on these matters, Mother has not adequately presented her challenge. Mother fails to identify or cite the record to support why CYFD's evidence fails to establish these findings beyond a reasonable doubt and how the district court's findings were not supported by substantial evidence. Therefore, we decline to evaluate these arguments. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (recognizing that "we do not review unclear or undeveloped arguments which require us to guess at what parties' arguments might be"); *Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 (providing that "we decline to review . . . arguments to the extent that we would have to comb the record to do so" and recognizing that we "will not search the record to find evidence to support an appellant's claims"); Rule 12-318(A)(4) NMRA ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence.").

**{13}**    Mother does specifically argue that CYFD presented only inadmissible evidence at the TPR trial to establish that J.C., one of Children, was initially neglected because Gouveia was not present at the events which lead to the initial abuse and neglect petition. Although Gouveia did testify about the events but did not submit an affidavit to the initial petition, we find this argument unpersuasive. As an initial matter, Mother did

not object to Gouveia's testimony at the TPR trial. Moreover, Mother pled no contest to the allegations in the initial petition. As part of the plea, Mother agreed that she was giving up her right to deny these allegations and that the factual basis for the plea was that Mother's actions "have placed [J.C.] in harm[']s way." Therefore, Gouveia testified only to facts previously established in the record.

**{14}** Next, Mother argues that the district court found abuse or neglect on the basis of the previous adjudication alone, contrary to this Court's opinion in Mother's first appeal. In that appeal, we explained that "because the district court relied, solely on judicial notice of Mother's prior adjudications to support its finding that Children were neglected, the district court failed to make its neglect determination under the correct standard," which is proof beyond a reasonable doubt. *See Maisie Y.*, 2021-NMCA-023, ¶ 22. The record establishes that the district court relied on more than its previous determinations and that, after considering those determinations and the evidence presented at the TPR trial, the district court concluded that CYFD proved all of the requisite elements beyond a reasonable doubt. At the TPR trial, the district court stated, "I'm taking notice of that adjudicatory judgment," but "that is not to say that we are relying solely on the information that is included in that judgment." The district court concluded in its order that "[C]hildren are neglected [C]hildren and the *neglect continues by the parents not following through with their case plan to change their behaviors and the actions of* [*Mother*] *at visitations.*"

**{15}** Specifically, as to Mother, the district court found that Mother "has not made any efforts from the adjudication and resisted participating in her case plan" by (1) revoking or limiting case plan information releases to CYFD; (2) failing to engage in therapy and case management services to maintain housing through relief programs; (3) failing to complete a domestic violence service intake; (4) failing to continue therapy and case management services to improve her mental health leading to Mother being discharged from the program; (5) failing to continue to attend family therapy with two separate providers; and (6) failing to complete a substance abuse aftercare program. Additionally, Mother was often unprepared for her scheduled visitations and her visitations were ultimately suspended when Mother cut off one of Children's lice infested hair, despite several redirections not to do so, and injured one of CYFD's workers during the incident. Gouveia testified that, although there was a period of time where Mother engaged in services, Mother eventually stopped engaging fully and her behavior became increasingly erratic, reluctant, and defensive—behavior consistent with Mother's overall participation in the life of the case. Therefore, the district court "tie[d] its finding to evidence presented during the TPR trial" as required by *Maisie Y. See id.* ¶ 20.

**{16}** Finally, Mother argues that evidence at the TPR trial established that continued efforts by CYFD would not be futile based upon Sanders' testimony that during a three-month period Mother was on her medication and showed significant progress. In contrast, Gouveia testified that, although there were times Mother did engage with CYFD, Mother would revert back to noncompliance with her case plan despite CYFD's efforts to refer Mother to service providers and assist with setting up appointments.

Mother is essentially asking that we weigh evidence in her favor to reverse the district court's decision. Nevertheless, on appeal, "this Court will not reweigh the evidence or substitute our judgment for that of the [district] court on factual matters or on matters of credibility." *State ex rel. Child., Youth & Fams. Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 26, 366 P.3d 282 (internal quotation marks and citation omitted).

**{17}** We conclude that the district court's decision to terminate Mother's parental rights was supported by substantial evidence.

**CONCLUSION**

**{18}** For the above reasons, we affirm the district court's order terminating Mother's parental rights.

**{19}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**ZACHARY A. IVES, Judge**